UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE: )
)                          Case No. 10-10691-HRT
RUMSEY LAND CO., LLC )
EIN: 41-210075 )
)                          Chapter 11
)
    Debtor. )

**DEBTOR'S MOTION FOR ORDERS: (I) APPROVING
SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF
ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11
U.S.C. § 363; (II) APPROVING SALE AND NOTICE PROCEDURES FOR SUCH SALE;
(III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF
DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
CONNECTION WITH SUCH SALE PURSUANT TO 11 U.S.C. § 365; AND (IV)
GRANTING RELATED RELIEF**

Rumsey Land Co., LLC (the "Debtor" or "Rumsey"), the debtor and debtor-in-possession

herein, by its undersigned attorneys, hereby files this motion for the entry of orders (i) approving

the sale of substantially all of the Debtor's assets free and clear of all liens, claims, interests and

encumbrances pursuant to 11 U.S.C. § 363; (ii) approving sale and notice procedures for such

sale; (iii) approving the assumption and assignment of certain of the Debtor's executory

contracts and unexpired leases in connection with such sale pursuant to 11 U.S.C. § 365; and (iv)

granting related relief (the "Motion").  In support of this Motion, the Debtor respectfully states as

follows:

## BACKGROUND

1.   The Debtor filed its Voluntary Petition pursuant to Chapter 11 of the Bankruptcy

Code on January 15, 2010.  The Debtor remains a Debtor-in-Possession.

2.   The Debtor continues in possession of its properties and is operating and managing

its businesses, as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy

Code.

## JURISDICTION AND VENUE

3.    The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE DEBTOR

4.    The Debtor is a privately held company in the business of owning real property in Elizabeth, Nederland, and Evans Colorado with water rights, gravel rights, and additional interests associated with the Evans Property ("Assets").

5.    The Evans property is subject to two secured claims.  A review of the security interests currently encumbering the Evans Property is generally set forth as follows:[1]

   a.    A first Deed of Trust to secure a loan made by Pueblo Bank and Trust ("Pueblo").  The Pueblo Deed of Trust collateralizes multiple properties owned by the Debtor including the Evans property.  Pueblo has filed a proof of claim in the amount of $5,640,292.72.

   b.    A second Deed of Trust to secure a loan held by RLF II.  The Deed of Trust encumbers the Evans property.  The amount outstanding on the loan is approximately $3,705,000.[2]

6.    The Elizabeth and Nederland properties are encumbered by the lien held by Pueblo.

7.    In connection with all matters related to the marketing and sale of the Assets, the Debtor has retained the services of General Capital Partners, LLC ("Broker").

_____

1 The discussion of the secured claims is not an admission by the Debtor of the amount, extent, or validity of the claims.

2 Debtor and the creditors John and Richard Green dispute that RLFII properly perfected its purported security interest.  Among other things, the deed of trust recorded for the benefit of RLF II does not contain a legal description of the property to be encumbered.  Moreover, the loan documents between RLF II and Debtor do not reference water rights.

8.    The Debtor has no funds or other resources to develop the Assets to generate revenue for creditors.  The only means of realizing value for creditors is through the sale of the Assets.

## RELIEF REQUESTED

9.    By this Motion, the Debtor is requesting entry of two separate orders, to be considered at two successive hearings.

10.    First, the Debtor seeks entry of an order in the form attached hereto as Exhibit A (1) approving certain sale procedures to be employed in connection with the proposed sale (the "Sale Procedures"); (2) approving the form and manner of notice of the proposed sale and Sale Procedures; (3) establishing the deadline by which parties may (i) object to the sale, including the assumption and assignment of executory contracts and unexpired leases and (ii) with respect to the proposed assumption and assignment of such contracts and leases, challenge the cure amounts, if any, identified by the Debtor; and (4) scheduling an auction (the "Auction") to consider competing bids for the purchase of the Assets and a hearing (the "Sale Hearing") to consider approval of any sale (the "Procedures Order").

11.    Second, the Debtor seeks entry of an order approving the sale of substantially all of the Assets free and clear of liens, claims, and other encumbrances (the "Sale Order").  The Sale Order would (1) authorize and approve the proposed sale pursuant to an Asset Purchase Agreement or Agreements submitted in accordance with the Sale Procedures, and (2) approve the assumption and assignment of any executory contracts and unexpired leases to be transferred to the successful competing bidder or bidders (the "Buyer(s)").   A proposed form of the Sale Order will be filed with the Court and served on parties in interest at least 10 days before the date set for the Sale Hearing.

## SALE PROCEDURES

12. To facilitate the orderly but expeditious sale of the Assets, the Debtor requests that the Court implement the following Sale Procedures:

13. The Assets shall be divided into the following lots:

      A.    Lot A shall be comprised of the water rights of the Evans property;

      B.    Lot B shall be comprised of the water storage rights of the Evans property;

      C.    Lot C shall be comprised of the aggregate mining rights of the Evans property;

      D.    Lot D shall be comprised of the residual surface and development rights of the Evans parcel;

      E.    Lot E shall be comprised of the surface and development rights of the Nederland parcel;

      F.    Lot F shall be comprised of the surface and development rights of the Elizabeth parcel;

      G.    Lot G shall be comprised of Lots A through F.

(collectively, the "Lots" and individually, a "Lot").

14. The Broker shall identify by not later than January 28, 2011 (the "Stalking Horse Deadline") an initial bidder or bidders for any one or all of the Lots (the "Stalking Horse Bidder(s)"), whose offer(s) shall be subject to higher or otherwise better competitive bids (the "Stalking Horse Bid(s)").

15. On February 25, 2011, an auction shall be conducted (the "Auction") in the event the Debtor receives multiple Qualified Bids (as defined below) for any one or more of the Lots.

16. Set forth below are the proposed procedures to be employed with respect to the sale of the Lots to the Successful Bidder(s) (as defined below), which are designed to facilitate a full

4

and fair process and maximize the value of the Assets for the benefit of the Debtor's creditors and bankruptcy estate.

Bidders

17. In order to participate in the sale process, each interested person or entity (a "Bidder") must deliver (unless previously delivered) to Debtor and the Broker the Required Bid Materials (as defined and detailed below).

18. A Bidder that delivers the Required Bid Materials whose financial information demonstrates the financial capability of the Bidder to consummate the sale, and that Debtor, in consultation with the Broker, determines is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale within an acceptable time frame shall be deemed a " Qualified Bidder." The bid shall be deemed a "Qualified Bid."

19. The Debtor shall make available at the written request of any creditor any bid that is not deemed a Qualified Bid.

Required Bid Materials

20. All bids must be received by the Bid Deadline (as defined below) and include the following information and documents (the "Required Bid Materials"):

(i)     A letter stating (A) which Lot(s) the Bidder desires to purchase, that the Bidder offers to purchase the designated Lot(s) and the purchase price proposed to be paid by the Bidder for designated Lot(s), (B) that such Bidder is prepared to enter into a legally binding purchase agreement, (C) that the Bidder's  offer is irrevocable until the Lot(s) on which the Bidder is submitting a bid have been sold pursuant to the closing of the sale or sales approved by the Bankruptcy Court, unless such Bidder is deemed to have submitted the Successful Bid or the Back-up Bid (each as defined below) in accordance with these procedures, in which case such Bidder's offer is irrevocable until two (2) business days after the closing of the sale of the Lot(s) and (D) that such bid is unconditional and is not subject to any due diligence or financing contingency.

(ii)    An executed confidentiality agreement in form and substance acceptable to Debtor;

(iii)    The most recent financial statements of the Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring any Lot, current financial statements of the equity holder(s) of the Bidder, and such other financial disclosure acceptable to, or requested by, the Debtor, which information shall demonstrate the financial capability of the Bidder to consummate the purchase of any Lot or Lots being bid upon (including evidence that the Bidder has adequate financing for the transaction), and to provide "adequate assurance of future performance," within the meaning of section 365(f)(2)(B) of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") of any executory contracts and unexpired leases to be assumed and assigned to such Bidder should the Bidder be the Successful Bidder or Back-up Bidder (both as defined below); if the Bidder (or the equity holders of an acquisition entity formed to be a Bidder), have financial statements that are audited by outside accountants, the financial statements required hereby shall be audited financial statements. In any event, an authorized representative of the bidder shall certify that the financial statements required hereby are true and correct;

(iv)    In the event the Debtor enters into a purchase agreement with a Stalking Horse Bidder, the purchase price submitted by any Bidder must be equal to or greater than the sum of (a) the purchase price set forth in such purchase agreement, (b) any break-up fee, (c) any expense reimbursement and (d) the Overbid Amount (as defined below).

(v)    In addition, in the event a Stalking Horse Bidder is designated for any Lot, a duly executed copy of a purchase agreement and a redline of the Bidder's proposed purchase agreement over that of the purchase agreement with the Stalking Horse Bidder. If no Stalking Horse Bidder is designated for a Lot, a duly executed copy of a proposed purchase agreement. A commitment to close on the sale as soon as reasonably practicable following the entry of the order approving the sale.

(vi)    A deposit (a "Deposit") in the amount of 10% of the purchase price proposed by the Bidder made payable to General Capital Partners, LLC, which shall be maintained by General Capital Partners, LLC in a segregated account, not subject to the claims, liens, security interests or encumbrances of any party. Deposits shall be returned to all Bidders other than the bid for each Lot that is deemed to be the highest and best offer(s) (the "Successful Bid(s)" and the "Successful Bidder(s)") and the second highest and best offer(s) for each Lot (the "Back-up Bid(s)" and the "Back-up Bidder(s)") within three (3) business days after entry of the order approving the sale. If the sale of the Lot(s) to the Successful Bidder(s) closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing in accordance with the purchase agreement between the Debtor and such Successful Bidder, and, within three (3) business days after the closing of the Lot(s) to the Successful Bidder, the Back-up Bidder's Deposit shall be returned to it. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder and the Debtor is not then in material breach of the purchase agreement, the Debtor will not have any obligation to return the Deposit deposited by such Successful Bidder and such

Deposit irrevocably will be come the property of the Debtor's estate and shall not be credited against the purchase price of the subsequent buyer (in addition to the Debtor reserving all other rights and remedies against the Successful Bidder). In such instance, the Back-up Bidder's deposit shall be applied to the purchase price at closing of the sale with the Back-up Bidder;

(vii)    A list of the Debtor's executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtor;

(viii)    For bids that are not a Stalking Horse Bid, a written acknowledgement that its bid is not conditioned upon the Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment;

(ix)    Written evidence of the Bidder's available cash or a commitment for financing or other evidence of proposed purchaser's ability to consummate the proposed transaction;

(x)    Full disclosure of the identity of each entity that will be bidding for the Lot(s) or otherwise participating with such bid, and the complete terms of any such participation; and

(xi)    Evidence that the Bidder has the necessary internal authorizations and approvals necessary to engage in the transaction without the consent of any entity that has not already been obtained.

## Bid Deadline

21.    A Bidder that desires to be considered a Stalking Horse Bidder shall on or before January 21, 2011 at 4:00 p.m. (the "Stalking Horse Bidder Deadline") deliver written and electronic copies of its Required Bid Materials, except that the Deposit shall be delivered only to General Capital Partners, LLC, to:

Aaron A. Garber, Esquire
Kutner Miller Brinen, P.C.
303 East Seventeenth Ave.
Suite 500
Denver, CO 80203
Tel. No. (303) 832-2400
Fax No. (303) 832-1510
Email: aag@kutnerlaw.com

Kevin Blaire, Esquire
General Capital Partners, LLC
370 17th Street

Suite 5660
Denver, CO 80202
Tel. No. (720) 200-4500
Fax (720) 200-4501
Email: krb@generalcapitalpartners.com

22.  A Bidder that desires to be participate at the Auction, and to the extent such Bidder has not already done so, shall on or before February 21, 2011 at 4:00 p.m. (the "Auction Bidder Deadline") deliver written and electronic copies of its Required Bid Materials, except that the Deposit shall be delivered only to General Capital Partners, LLC, to:

Aaron A. Garber, Esquire
Kutner Miller Brinen, P.C.
303 East Seventeenth Ave.
Suite 500
Denver, CO 80203
Tel. No. (303) 832-2400
Fax No. (303) 832-1510
Email: aag@kutnerlaw.com

Kevin Blaire, Esquire
General Capital Partners, LLC
370 17th Street
Suite 5660
Denver, CO 80202
Tel. No. (720) 200-4500
Fax (720) 200-4501
Email: krb@generalcapitalpartners.com

23.  Any Bidder that provides a Qualified Bid by the Stalking Horse Bidder Deadline shall be permitted to be considered as a Stalking Horse Bidder.   Any Bidder that provides a Qualified Bid by the Auction Bidder Deadline shall be permitted to participate at the Auction.

Designation of Stalking Horse Bidder

24.  For each and every Lot for which a Qualified Bid is received before the Stalking Horse Bidder Deadline, the Debtor shall designate the highest and best Qualified Bid and the Bidder shall be deemed the Stalking Horse Bidder for the purpose of establishing a minimum acceptable bid with which to begin the bidding at the Auction.

8

The Auction and Auction Procedures

25.  If more than one Qualified Bid has been timely received by the Debtor for any Lot, the Debtor shall conduct the Auction for such Lots.

26.  The Auction shall be conducted at the offices of Kutner Miller Brinen, P.C., 303 East Seventeenth Avenue, Suite 500, Denver, Colorado 80203 at 11:00 a.m. (prevailing Mountain time) on February 25, 2011.

27.  Only the Debtor, the Broker, and Qualified Bidders will be entitled to attend, participate and be heard at the Auction, and only Qualified Bidders will be entitled to make any subsequent overbids at the Auction. Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale. The Auction shall be an open bidding process in the presence of all other Qualified Bidders for a particular Lot. The Debtor may at its discretion allow creditors or its counsel to attend the Auction so long as such creditors desiring to attend the auction provide written notice to counsel for Debtor at least fourteen days before the Auction.  Any creditor permitted to attend the Auction must not interfere with the Auction.

28.  The Debtor may permit a Qualified Bidder to bid by telephone, in person or any combination thereof.

29.  At the Auction, bidding will begin at the purchase price stated in the highest or otherwise best Qualified Bid for a particular Lot (the identity of which shall be announced by the Debtor at the commencement of the Auction for each Lot), and will subsequently continue in minimum increments of at least $25,000 higher than the previous Qualified Bid (the "Overbid Amount"), plus the initial Overbid Amount shall include any break-up fee and expense reimbursement as approved by the Court. The bidding shall not end until all bidders have submitted their last and best offers.

30.  As soon as practicable after the conclusion of the Auction, Debtor and the Broker shall (i) review each Qualified Bid on the basis of the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest or otherwise best offer for each Lot and the second highest and best offer for the purchase of each Lot.

Acceptance of Qualified Bids

31.  The Debtor shall sell ach Lot to any Successful Bidder(s) only upon the approval of a Successful Bid by the Bankruptcy Court. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.  All interested parties reserve their right to object to the Debtor's selection of any Successful Bidder.

32.  The Debtor, in consultation with its Broker, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures; provided, however, that the Debtor shall not be deemed to have rejected any bid unless or until either a sale for each Lot closes and/or such bid is rejected in writing.

Credit Bid

33.  Pueblo shall be deemed a Qualified Bidder and entitled to attend the Auction to credit bid the amount of its secured claim.  The amount to which Pueblo is entitled to credit bid shall be agreed to by the Debtor and Pueblo, or if the parties cannot agree, determined by the Court prior to the Auction.  If Pueblo's bid contains a cash component, Pueblo shall be required

to submit the Required Bid Materials in accordance with and by applicable deadlines set forth herein.

Sale Hearing

34.  A hearing to approve the sale of each Lot (the "Sale Hearing") shall be scheduled at the convenience of the Bankruptcy Court as soon as is practicable after the Auction. At the Sale Hearing, the Debtor may present any Successful Bids to the Bankruptcy Court for approval or, in the event of any default by any such Successful Bidder, the Back-up Bid.

35.  Following the approval of the sale of all or a portion of the Lots to any Successful Bidder(s) at the Sale Hearing, if such Successful Bidder fails to consummate an approved Sale, the Debtor shall be authorized to deem the Back-up Bid, as disclosed, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale with the Back-up Bidder without further order of the Bankruptcy Court.

Modifications

36.  If necessary to satisfy fiduciary duties, the Debtor may amend or supplement these Sale Procedures at any time in any manner that is consistent with these Sale Procedures and will best promote the goals of the sale process.

Notice and Objection

37.  Within three business days after the Stalking Horse Deadline, the Debtor shall file with the Court a Notice identifying each Stalking Horse Bidder, each Stalking Horse Bid, along with a copy of all proposed Asset Purchase Agreements and a proposed form order approving any provision in the Stalking Horse Bid(s) that would impact the Sale Procedures or the Auction and providing parties in interest with seven days to object the Stalking Horse Bids (the "Bid Notice").

38. Any party that desires to receive a copy of the Bid Notice shall provide in writing by January 21, 2011 a written request to counsel for the Debtor requesting to be served with a copy of the Bid Notice, which request shall: (a) identify the creditor, and the identify of counsel for the creditor if represented; (b) a telephone number for the creditor or its counsel; and (c) a fax number or email address where the Bid Notice should be served.

39. If an objection is timely filed and served, the Debtor shall file a Motion for expedited hearing. If no objection is filed and served a Certificate of Non-Contested Matter shall be filed with the Court.

40. Within three business days of the Auction, the Debtor shall file with the Court a notice: (a) identifying each Successful Bidder, each Successful Bid, along with a copy of all proposed Asset Purchase Agreements for each Successful Bid; and (b) identifying each back-up Bidder, the Back-up Bid, along with a copy of all proposed Asset Purchase Agreements for each Back-up bid (the "Sale Notice").

41. Parties-in-interest shall have three business days from the filing of the Sale Notice to object to any proposed sale. Any party that desires to receive a copy of the Sale Notice shall provide in writing by February 21, 2010 a written request to counsel for the Debtor requesting to be served with a copy of the Sale Notice, which request shall: (a) identify the creditor, and the identify of counsel for the creditor if represented; (b) a telephone number for the creditor or its counsel; and (c) a fax number or email address where the Sale Notice should be served.

## AUTHORITY FOR SALE

42. Section 363(b) of the Bankruptcy Code provides authority for a trustee and, through the application of Bankruptcy Code section 1107(a), a debtor-in-possession, "after notice and a hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The authority to sell assets conferred upon a debtor by section

363(b) "include[s] a sale of substantially all the assets of an estate." Otto Preminger Films, Ltd,

v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.), 950 F.2d 1492, 1495 (9th Cir.

1991). Further, section 105(a) of the Bankruptcy Code allows the Court to "issue any order,

process or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).

43. The Bankruptcy Court's power to authorize a sale under section 363(b) is to be

exercised at the Court's discretion. In re WPRV-TV, Inc., 983 F.2d 336, 340 (1st Cir. 1993);

New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1346 (2d Cir. 1985);

Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d

Cir. 1983).

44. Courts have authorized a sale of all or substantially all of a debtor's assets pursuant

to section 363(b) of the Bankruptcy Code or in the absence of a reorganization plan where there

is a "sound business purpose." In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991);

Titusville Country Club v. Penn Bank (In re Titusville Country Club), 128 B.R. 396 (Bankr.

W.D.Pa. 1991); In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc., 77

B.R. 15 (Bankr. E.D.Pa. 1987). See also, Stephens Indus., Inc. v. McClune, 789 F.2d 386 (6th

Cir. 1986); In re Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test

in the context of a sale of assets under section 363(b) of the Bankruptcy Code).

45. In this case, the "sound business purpose" test is easily met because the Debtor is

unable to obtain debt or equity financing to continue operations. The Sale Procedures proposed

herein is the best means for marketing the Lots to obtain and determine the highest and best offer

for the Lots.

46. Courts have also required that the sale price be fair and reasonable and that the sale

be the result of good-faith negotiations with the buyer. In re Abbotts Dairies of Pa., 788 F.2d

143, 147-50 (3rd Cir. 1986); <u>In re Tempo Technology Corp.</u>, 202 B.R. 363, 367 (D. Del. 1996), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Diamond Abrasives Corp. v. Temtechco, Inc. (In re Temtechco, Inc.)</u>, 141 F.3d 1155 (3d Cir. 1998); <u>In re Industrial Valley</u>, 77 B.R. at 22; <u>In re Stroud Ford, Inc.</u>, 163 B.R. 730 (Bankr. M.D. Pa. 1983); <u>See</u> <u>also</u> <u>In re Ewell</u>, 958 F.2d 276 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to section 363 of the Bankruptcy Code because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code).

47.  While the Bankruptcy Code does not define "good faith," courts have held that for purposes of section 363(m), a "good faith purchaser" is one who buys "in good faith" and "for value" and that lack of good faith is shown by fraud, collusion, or an attempt to take grossly unfair advantage of other bidders.  <u>In re Abbots Diaries of PA.</u>, 788 F.2d at 147; <u>In re Tempo Technology Corp.</u>, 202 B.R. at 367. The Sale Procedures proposed herein will assure that the highest and best offer is received and will maximize value received for the Assets through an arms-length transaction.

48.  The adequacy of the consideration to be received by the Debtor will be tested in the marketplace.  The Sale Procedures are designed to permit the Debtor to obtain the best possible price for the Lots.  Thus, the Debtor is confident that the sale process will result in the highest and best bid obtainable for the purchased Lots.

49.  The Debtor therefore respectfully submits that a prompt sale is in the best interest of creditors and will maximize the amount that creditors may realize on account of their claims in this case.

## <u>SALE FREE AND CLEAR OF LIENS</u>

50.  The Debtor is also requesting authorization to sell the Lots free and clear of liens, claims and encumbrances and other interests.  Section 363(f) of the Bankruptcy Code authorizes

a debtor in possession to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

> a) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> b) such entity consents;
>
> c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> d) such interest is bona fide dispute; or
>
> e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

51. In this case, the Debtor anticipates that the purchase price received for the encumbered assets may exceed the aggregate value of all known liens on the assets to be sold. To the extent such occurs, the requirements under Bankruptcy Code § 363(f)(3) will be satisfied. All liens will attach to the proceeds with the same validity, priority and perfection, and to the same extent as may exist in the Assets which are sold.

52. In addition, all lienholders could be compelled to accept a money satisfaction of their interests, thereby satisfying § 363(f)(5) of the Bankruptcy Code. See, e.g., In re James, 203 B.R. 449, 453 (Bankr. W.D.Mo. 1997); In re Grand Slam U.S.A., Inc., 178 B.R. 460, 463-64 (E.D. Mich. 1995); WPRY-TV, Inc., 143 B.R. at 321. Courts considering this issue have held that the "cramdown" provision under the Bankruptcy Code constitutes such a "legal or equitable proceeding" and permits a sale free and clear pursuant to section 363(f)(5). See, e.g., Grand Slam U.S.A., Inc., 178 B.R. at 464; Scherer v. Federal National Mortgage Association (In re Terrace Chalet Apartments), 159 B.R. 821, 829 (N.D. Ill. 1993); In re Healthco Int'l, Inc., 174 B.R. 174, 176-77 (Bankr. D.Mass. 1994).

## ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

53. A sale approved by the Court may contemplate that certain executory contracts and unexpired leases (collectively, the "Assumed Contracts") be assumed and assigned.  To the extent there are to be any Assumed Contracts, a fair but expeditious procedure that minimizes the need for litigation should be established.   To effectuate this goal, the Debtor proposes the following procedures to administer the Assumed Contracts (the "Cure Procedures"):

a) No later than 4 days after the Sale Hearing, the Debtor shall serve a notice upon each of the non-debtor parties to the Assumed Contracts (each a "Non-Debtor Party" and collectively, the "Non-Debtor Parties") that the Debtors intend to assume and assign the Assumed Contracts to the Successful Bidder (the "Proposed Cure Notice").  The Proposed Cure Notice will state the the date by which any objection to the assumption and assignment of the Assumed Contracts must be filed and served.  The Proposed Cure Notice also will identify the amounts, if any, that the Debtor believes it owes to the Non-Debtor Parties to cure defaults under each of the Assumed Contracts respectively for purposes of 11 U.S.C. § 365(b)(1)(A) (the "Proposed Cure Amounts").

b) Non-Debtor Parties that disagree with the Proposed Cure Amount shall file and serve upon the Debtor an objection to any Proposed Cure Amounts (a "Cure Objection") within the time stated in the notice. A Cure Objection must set forth a specific default in any Assumed Contract and claim a specific monetary amount that differs from the amount (if any) specified by the Debtor in the Proposed Cure Notice.

c) A Non-Debtor Party that does not timely file and serve a Cure Objection shall be estopped and barred from asserting that a higher cure amount is required for assumption of its Assumed Contract(s) than the Proposed Cure Amount listed in the Cure Notice as to such Assumed Contract(s).  In such event, such Non-Debtor Party will receive only the Proposed Cure Amount set forth in the Proposed Cure Notice, if such Assumed Contract(s) is/are assumed.   The assignee of such Assumed Contracts will be relieved of any liability to the Non-Debtor Parties that accrued or arose before the entry of the Sale Order, and the Debtor shall be relieved of all liability accruing or arising thereafter pursuant to 11 U.S.C. § 365(k).

16

d) A Non-Debtor Party that timely and properly files and serves a Cure Objection shall reserve the right to assert its proposed cure amount at a hearing before the Assumed Contract(s) subject to such Cure Objection may be assumed.  The Debtor, the Successful Bidder, and such Non-Debtor party shall confer in good faith before the Hearing to determine whether their disagreement may be settled or any issues may be narrowed.  A Proposed Cure Amount may be modified by agreement between the Debtor and a Non-Debtor Party without further order of the Court.  The Purchaser may also withdraw its request for assignment of an Assumed Contract at any time before an order is entered approving assumption.

54. Section 365 of the Bankruptcy Code authorizes a debtor in possession to assume an executory contract or unexpired lease subject to court approval.  Section 365(b)(1) codifies the requirements for assuming an executory contract, providing that if there has been a default in an executory contract or unexpired lease, the trustee may not assume such contract or lease unless, at the time of assumption, the trustee:

(A)     cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

55. Section 365 also permits a debtor to assign an executory contract or unexpired lease to a third party.  Even where the executory contracts and unexpired leases contain provisions that purport to limit assignment, the Bankruptcy Code provides that generally, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the [debtor] may assign such contract or lease" provided the debtor assumes such contract or lease in compliance

17

with section 365 and the debtor provides adequate assurance of future performance by the assignee. <u>See</u> 11 U.S.C. §365(f).

56. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical pragmatic construction." <u>See, e.g.,</u> <u>In re Great Northwest Recreation Ctr., Inc.</u>, 74 B.R. 846 (Bankr. D.Mont. 1987); <u>Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)</u>, 103 B.R. 524, 538 (Bankr. D.N.J. 1988); <u>In re Bon Ton Rest. & Pastry Shop, Inc</u>., 53 B.R. 789, 803 (Bankr. N.D.Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance").

57. Assumption or rejection of executory contracts or an unexpired lease by a debtor is subject to court review under the business judgment standard. <u>See</u> <u>NLRB v. Bildisco and Bildisco</u>, 465 U.S. 513, 523 (1984); <u>In re Mile High Medal Systems, Inc.</u>, 899 F.2d 887, 896 (10th Cir. 1990); <u>In re Grayhall Resources, Inc.</u>, 63 B.R. 382, 384 (Bankr. D. Colo. 1986).

58. Pursuant to the business judgment test, the Debtor's decision to assume or reject an executory contract or an unexpired lease is not subject to Court review when the Debtor decides, in good faith, that assumption or rejection is beneficial to the estate. <u>In re Chipwich, Inc.</u>, 54 B.R. 427, 430-431 (Bankr. S.D.N.Y. 1985) (<u>In Control Data Corp. v. Zelman</u>) (<u>In re Minges</u>, 602 F.2d 38, 43 (2nd Cir. 1979); ("it is enough, as a matter of business judgment, rejection of the contract may benefit the estate"). Under Section 365(a), "the Debtor's business judgment should not be interfered with, absence showing a bad faith or abuse of business discretion." <u>Chipwich, Inc.</u>, 54 B.R. 430-31. As stated by one Court, "Court approval under Section 365(a), if required except in extraordinary situations, should be granted as a matter of course." <u>Summit Land Co. v. Allen (In re Summit Land Co.)</u>, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

59. The Debtor believes the justifications for the proposed sale set forth in this motion and, to the extent necessary, at the Sale Hearing conclusively demonstrate that adequate business justifications exist to merit judicial approval of the proposed assumption and assignment of the Assumed Contracts to the Successful Bidder.   The Debtor may require that the Purchaser demonstrate that it possesses the financial capacity to satisfy any and all obligations incurred in connection with the assumption of the Assumed Contracts.   Additional assurances from the Purchaser may be sought following the Auction, if necessary.   Therefore, the Debtor requests that the Court establish the Cure Procedures in the Procedures Order and approve the proposed assumption of the Assumed Contracts by separate Order.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Procedures Order as described above, enter the Sale Order as described above, and grant such other relief as may be just.

Dated: December 27, 2010

Respectfully submitted,

Aaron A. Garber #36099

**Kutner Miller Brinen, P.C.**
303 East Seventeenth Ave.
Suite 500
Denver, CO 80203
Telephone: (303) 832-2400
Facsimile: (303) 832-1510
Email: jsb@kutnerlaw.com

ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 27, 2010, I served by prepaid first class mail a copy of the foregoing **DEBTOR'S MOTION FOR ORDERS: (I) APPROVING SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. SECTION 363; (II) APPROVING SALE AND NOTICE PROCEDURES FOR SUCH SALE; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE PURSUANT TO 11 U.S.C. SECCTION 365; AND (IV) GRANTING RELATED RELIEF AND NOTICE OF DEBTOR'S MOTION FOR ORDERS: (I) APPROVING SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. SECTION 363; (II) APPROVING SALE AND NOTICE PROCEDURES FOR SUCH SALE; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE PURSUANT TO 11 U.S.C. SECCTION 365; AND (IV) GRANTING RELATED RELIEF** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Paul V. Moss, Esq.
United States Trustee's Office
999 18th Street
Suite 1551
Denver, CO 80202

Kevin Blair, Esq.
General Capital Partners, LLC
370 17th Street
Suite 5660
Denver, CO 80202

Rod Guerrieri
Rumsey Land Co., LLC
4600 South Ulster Street
Suite 880
Denver, CO 80237

Michael G. Milstein, Esq.
Foster Graham Milstein & Calisher, LLP
621 Seventeenth Street
19th Floor
Denver, CO 80293

Lisa K. Mayers, Esq.
Grimshaw & Harring, P.C.
1700 Lincoln Street
Suite 3800
Denver, CO 80203

Peter Cal, Esq.
Sherman & Howard
633 17th Street
Suite 3000
Denver, CO 80202

William A. Morris, Jr., Esq.
1600 Broadway
Suite 2600
Denver, CO 80202

TRACS Clubs
432 South Broadway
Denver, CO 80209

Shaun A. Christensen, Esq.
Appel & Lucas, P.C.
1660 17th Street
Suite 200
Denver, CO 80202

John T. Sullivan, Esq.
Sullivan Green Seavy, LLC
3223 Arapahoe Avenue
Suite 300
Boulder, CO 80303

Joel Laufer, Esq.
Laufer & Padjen, LLC
5290 DTC Parkway
Suite 150
Englewood, CO 80111

Joe O'Brien
Water Colorado, LLC
3384 East Mulberry Street
Fort Collins, CO 80524

**Vicky Martina**